1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



FILED
CLERK, U.S. DISTRICT COURT

DEC 2 2 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| UNITED STATES OF AMERICA, | No. EDCR 09-00121(B) CBM |
|---|---|
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS DEFENDANT'S POST ARREST STATEMENT AND EVIDENCE FOUND DURING TRAFFIC STOP SEARCH** |
| v. | |
| VIRGIL LARONE HILEY, | |
| Defendant. | |

The matter before the Court, the Honorable Consuelo B. Marshall presiding, is Defendant Virgil Larone Hiley's Motion to Suppress Defendant's Post Arrest Statement and Evidence Found During Traffic Stop Search. [Docket No. 126.] Upon consideration of the testimony and evidence received, and the Court's evaluation of the demeanor and credibility of the witnesses, the Court finds as

follows:

## I. FINDINGS OF FACT

### A. THE PARTIES AND LITIGATION

1. On August 1, 2008, two-hundred and ten dollars ($210) in U.S. currency was seized from Defendant Virgil Larone Hiley's ("Mr. Hiley") wallet in San Bernardino, California by San Bernardino Police Department Officer Erick Bennett ("Officer Bennett").

2. On August 1, 2008, Mr. Hiley made purported statements to San Bernardino Police Department Officer Gerald Beall ("Officer Beall") in the bathroom of the Knights Inn Motel in San Bernardino, California.

3. On August 8, 2008, Plaintiff United States of America ("Plaintiff") filed a Complaint against Mr. Hiley for knowingly and intentionally possessing with intent to distribute cocaine base in the form of crack cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). [Docket No. 1.]

4. On August 12, 2008, Plaintiff filed an Indictment against Mr. Hiley for: (1) knowingly and intentionally possessing with intent to distribute a mixture and substance containing a detectable amount of cocaine base in the form of crack cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(iii); (2) knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); and, (3) felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1). [Docket No. 8.]

5. On March 29, 2010, Mr. Hiley filed a Motion to Suppress Evidence, which was heard before Judge Virginia Phillips. [Docket No. 19.] On April 28, 2010, the Motion to Suppress Evidence was denied for lack of standing. [Docket No. 39.]

6. On September 26, 2011, Mr. Hiley filed a Motion for Reconsideration of Motion to Suppress and Request for a *Franks* Hearing. [Docket No. 127.]

7. On September 26, 2011, Mr. Hiley filed a Motion to Suppress Defendant's Post Arrest Statement and Evidence Seized During Traffic Stop. [Docket No. 126.]

8. On November 29, 2011, the Court granted Mr. Hiley's request and held a *Franks* hearing.

9. On December 8, 2011, Plaintiff filed a Second Superseding Indictment against Mr. Hiley for: (1) knowingly and intentionally possessing with intent to distribute a mixture and substance containing a detectable amount of cocaine base in the form of crack cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(iii); (2) knowingly and intentionally possessing with intent to distribute methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(viii); (3) knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); and, (4) felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1). [Docket No. 146.]

## B. THE TRAFFIC STOP SEARCH

10. On August 1, 2008, Officer Beall conducted surveillance at the Knights Inn Motel in San Bernardino, California based on information that he received from "confidential reliable informants" that Mr. Hiley, aka "Splurge," was possibly staying at the motel.

11. The "confidential reliable informants" informed Officer Beall that "Splurge" was a Black male in his mid-30s who reportedly drove a black, possibly Ford, pick-up truck. The "confidential reliable informants" also

3

1  informed Officer Beall that "Splurge" had been selling cocaine base in the

2  City of San Bernardino, specifically in the downtown area.

3  12.  Officer Anthony White ("Officer White"), Officer Richard Everette

4  ("Officer Everette"), Officer Bennett, and Officer Beall conducted the

5  surveillance of Mr. Hiley outside of the Knights Inn Motel.

6  13.  Officer White observed Mr. Hiley drive into and park in the Knights Inn

7  Motel parking lot in a black Ford Ranger. After Mr. Hiley sat in his truck

8  for a few minutes, Officer White then observed him enter room 224 with a

9  motel room key.

10  14.  Officer White observed another man park a red car in the Knights Inn Motel

11  parking lot and enter room 224 without a room key a few minutes later.

12  Officer White observed Mr. Hiley leave the motel room approximately two

13  minutes later.

14  15.  Mr. Hiley then drove away from the Knights Inn Motel in his black Ford

15  Ranger and was followed by two officers, Detective Vicki Cervantes

16  ("Detective Cervantes") and Officer Francisco Gonzalez ("Officer

17  Gonzalez").

18  16.  Detective Cervantes was requested to assist Officer Beall in an investigation

19  near the Knights Inn Motel earlier that morning.

20  17.  Detective Cervantes observed Mr. Hiley drive out of the Knights Inn Motel

21  parking lot. Detective Cervantes was requested to assist with a traffic stop

22  of Mr. Hiley, who was the target of Officer Beall's investigation.

23  18.  Mr. Hiley testified that he used his turn signal to make a right hand turn

24  onto Orange Show Road, which only had one open lane. Mr. Hiley also

25  testified that the extreme right hand lane of Orange Show Road was closed

26  for construction.

27  19.  Detective Cervantes testified that she saw Mr. Hiley enter into the extreme

28  right hand lane of Orange Show Road and then move into the adjoining left

4

lane without using his turn signal, in violation of California Vehicle Code Section 22107.

20. Detective Cervantes and Officer Gonzalez initiated a traffic stop after driving approximately one more block to an intersection.

21. Officer Gonzalez had most of the direct contact with Mr. Hiley during the traffic stop before Officer Bennett arrived to the scene.

22. Officer Gonzalez ordered Mr. Hiley to get out of the car, searched him, and handcuffed him.

23. Officer Bennett then took Mr. Hiley to the trunk of the patrol car, searched him again, and asked him for a key to a motel room at the Knights Inn Motel.

24. Officer Bennett then placed Mr. Hiley in the back of the patrol car, where Mr. Hiley remained for approximately forty-five minutes.

25. Officer Bennett then went back to Mr. Hiley's truck to assist Officer Gonzalez and Detective Cervantes with the search of the truck.

26. Neither contraband nor evidence of any illegal activity was found during the search of Mr. Hiley or his truck.

27. The only items that were uncovered from the search of Mr. Hiley and his truck were Mr. Hiley's driver's license and two-hundred and ten dollars ($210) in U.S. currency that were found in Mr. Hiley's wallet.

28. A key to a motel room was not found on Mr. Hiley or in his truck.

29. Officer Bennett took Mr. Hiley's driver's license and the two-hundred and ten dollars ($210) in U.S. currency and left the scene.

### C. THE POST-ARREST STATEMENT

30. After the traffic stop search, Officer Gonzalez and Detective Cervantes were requested by Officer Everette to transport Mr. Hiley back to the Knights Inn Motel.

31. Officers were already inside room 224 when Mr. Hiley arrived to the Knights Inn Motel.

32. Mr. Hiley remained handcuffed and was held in room 224 of the Knights Inn Motel for an additional forty minutes to one hour while Officer Beall secured a search warrant.

33. Officer Beall returned with a search warrant and questioned Mr. Hiley in the bathroom of room 224. Mr. Hiley answered some of Officer Beall's questions.

34. Mr. Hiley remained handcuffed from the traffic stop through the search of room 224 of the Knights Inn Motel.

## II. CONCLUSIONS OF LAW

35. The Fourth Amendment protects individuals against unreasonable searches and seizures. *Weeks v. United States*, 232 U.S. 383, 398 (1914); *see also Terry v. Ohio*, 392 U.S. 1, 9 (1968). The Fourth Amendment imposes limits on search-and-seizure powers in order to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals. Courts traditionally weigh the public interest against the Fourth Amendment interests of the individual. *U.S. v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976).

36. "[S]ubject only to a few specifically established and well-delineated exceptions," a search is presumed to be unreasonable under the Fourth Amendment if it is not supported by probable cause and conducted pursuant to a valid search warrant. *Katz v. United States*, 389 U.S. 347, 357 (1967). "Although automobiles, due to their inherent mobility, can frequently be searched without a warrant, the search must be supported by probable cause unless some other Fourth Amendment exception applies." *United States v. Caseres*, 533 F.3d 1064, 1070 (9th Cir. 2008); *see also Chambers v. Maroney*, 399 U.S. 42, 51 (1970).

37. Evidence obtained in violation of the Fourth Amendment must be excluded from a federal prosecution. *Weeks v. United States*, 232 U.S. 383, 398 (1914). All evidence resulting from an illegal search must be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

38. "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.' An officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also 'be grounded in objective facts and be capable of rational explanation.'" *United States v. Lopez-Soot*, 205 F.3d 1101, 1105 (9th Cir. 2000) (internal citations omitted).

39. "The Fourth Amendment requires 'some minimal level of objective justification' for making the stop." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). "A suspicion based on such a mistaken view of the law cannot be the reasonable suspicion required for the Fourth Amendment, because 'the legal justification [for a traffic stop] must be objectively grounded.' In other words, if an officer makes a traffic stop based on mistake of law, the stop violates the Fourth Amendment." *United States v. Mariscal*, 285 F.3d 1127, 1130 (9th Cir. 2002).

40. "The inevitable discovery exception to the exclusionary rule is available when the government demonstrates, by a preponderance of the evidence, that it would inevitably have discovered the incriminating evidence through lawful means." *United States v. Lopez-Soot*, 205 F.3d 1101, 1106 (9th Cir.

2000). "The government can meet its burden by demonstrating that, 'by following routine procedures, the police would inevitably have uncovered the evidence.'" *Id.* (citing *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1399 (9th Cir. 1989).

41. "Under California law, a subset of inmates who are eligible for release on state parole 'shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." *United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008) (citing CAL. PENAL CODE § 3067(a)).

42. The California Penal Code Section 3067(a) search condition "validates a search only if the police had advance knowledge that the search condition applied before they conducted the search." *United States v. Caseres*, 533 F.3d 1064, 1075-76 (9th Cir. 2008). The California Penal Code Section 3067(a) search condition "applies only to parolees whose offense 'was committed on or after January 1, 1997.'" *United States v. Caseres*, 533 F.3d 1064, 1076 (9th Cir. 2008) (citing CAL. PENAL CODE § 3067(c)).

43. California Vehicle Code Section 22017 states that "[n]o person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the matter provided in this chapter *in the event any other vehicle may be affected by the movement*." CAL. VEHICLE CODE § 22107 (emphasis added).

44. California Vehicle Code Section 22108 states that "[a]ny signal of intention to turn right or left shall be given continuously during the last 100 feet traveled by the vehicle before turning." CAL. VEHICLE CODE § 22108.

45. "[S]ections 22107 and 22108 must be read together so that when a motorist is required by section 22107 to give a turn signal, that signal must be given

8

continuously during the last 100 feet traveled by the vehicle before turning." *People v. Carmona*, 195 Cal. App. 4th 1385, 1392 (2011). "[R]eading sections 22107 and 22108 together, a motorist must continuously signal during the last 100 feet traveled before turning, but only in the event other motorists may be affected." *Id.* at 1394.

46. The Court finds that California Vehicle Code Section 22107 makes a failure to signal a lane change a violation only if the lane change affects another vehicle in traffic.

47. The Court finds that there is no evidence that Detective Cervantes and Officer Gonzalez were or could have been affected by Mr. Hiley's lane change. The Court further finds that there is no evidence that there were any other motorists on Orange Show Road who were or could have been affected by Mr. Hiley's lane change.

48. The Court finds that Mr. Hiley did not violate California Vehicle Code Section 22107. The Court further finds that, even if Mr. Hiley failed to signal a lane change, it did not justify a traffic stop pursuant to California Vehicle Code Section 22107.

49. The Court finds that the government did not provide any evidence of what Detective Cervantes and Officers Gonzalez would have done if they had not stopped Mr. Hiley pursuant to California Civil Code Section 22107.

50. The Court finds that, in the absence of a violation of a statute, other unlawful conduct, or questionable activity on behalf of Mr. Hiley, no lawful basis existed to justify the traffic stop conducted by Detective Cervantes or Officer Gonzalez.

51. The Court therefore finds that the search of Mr. Hiley and his truck were unconstitutional because the underlying traffic stop was unlawful.

52. The Court finds that Detective Cervantes and Officer Gonzalez violated the Fourth Amendment when they stopped Mr. Hiley. The evidence gathered

1    as a result of the unconstitutional stop must therefore be suppressed.

2    53.   The Court also finds that the search of Mr. Hiley and his truck were not

3          constitutional as a parole search. There is no evidence that Detective

4          Cervantes or Officer Gonzalez were aware that California Penal Code

5          Section 3067 applied before they ordered Mr. Hiley out of his truck. There

6          is also no evidence that Detective Cervantes or Officer Gonzalez knew that

7          Mr. Hiley was a parolee of the State of California, or that they knew

8          whether Mr. Hiley's prior offense had been committed prior to January 1,

9          1997.

10   54.   The Court therefore finds that any evidence obtained from the search of Mr.

11         Hiley's person and his truck is fruit of the poisonous tree.

12   55.   Officer Gonzalez handcuffed Mr. Hiley, and Officer Bennett placed Mr.

13         Hiley in the back of the patrol car. Mr. Hiley remained in the back of the

14         patrol car for approximately forty-five minutes before being transported to

15         the Knights Inn Motel. At that point, the Court finds that Mr. Hiley was

16         under arrest and was not free to leave.

17   56.   The Court finds that the search of Mr. Hiley and his truck did not uncover

18         any additional evidence warranting his being transported from the traffic

19         stop to the Knights Inn Motel.

20   57.   The Court finds that Mr. Hiley's arrest and subsequent transportation to

21         room 224 of the Knights Inn Motel was also a result of the unlawful traffic

22         stop.

23   58.   After Officer Beall obtained the search warrant of room 224, he took Mr.

24         Hiley to the bathroom of room 224. While Mr. Hiley was detained, Officer

25         Beall began to question him. The statements that Mr. Hiley made to Officer

26         Beall are therefore suppressed as fruit of the poisonous tree.

27   59.   The Court finds that the two-hundred and ten dollars ($210) in U.S.

28         currency found in Mr. Hiley's wallet was the direct result of the unlawful

traffic stop, as well as the unlawful search of Mr. Hiley and his truck. The two-hundred and ten dollars ($210) in U.S. currency are therefore suppressed as fruit of the poisonous tree.

60. The Court finds that any statements that Mr. Hiley made to Officer Beall were the direct result of the unlawful traffic stop and the unlawful seizure of Mr. Hiley, which involved his being transported from the traffic stop to the Knights Inn Motel. The statements are therefore suppressed as fruit of the poisonous tree.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Virgil Larone Hiley's Motion to Suppress Defendant's Post Arrest Statement and Evidence Found During Traffic Stop Search. [Docket No. 126.]

**IT IS SO ORDERED.**

DATE: December 22, 2011

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE